IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| SCOT E. UNDERWOOD, )<br>)<br>   Plaintiff, )<br>)<br>v. )<br>)<br>COMMISSIONER OF THE SOCIAL )<br>SECURITY ADMINISTRATION, )<br>)<br>   Defendant. ) | Case No. 14-3175 |

<u>OPINION</u>

RICHARD MILLS, United States District Judge:

This is an action for judicial review of a final administrative decision denying Social Security disability benefits to Plaintiff Scot E. Underwood. Pending are the Plaintiff's Motion for Summary Judgment and the Defendant's Motion for Summary Affirmance.

      I.     INTRODUCTION

Plaintiff Scott E. Underwood, who was born in 1967, filed for Disability Insurance Benefits and Supplemental Security Income in 2009, alleging he had been disabled since June 15, 2009. The Plaintiff graduated from high school. He was in the special education program because he could not read or write. The

[1]

Plaintiff testified he still is unable to read and write. He also is unable to perform basic math and cannot make change. He has work experience as a car detailer.

Following a hearing, Administrative Law Judge (ALJ) Diane Raese Flebbe issued a decision on March 15, 2003, finding that Plaintiff retained the residual functional capacity to perform a reduced range of light work. The ALJ found that jobs accommodating the Plaintiff's limitations existed in significant numbers in the local and national economy and Plaintiff, therefore, was not disabled.

The Appeals Council denied the Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.

## II. FACTS

### A. Medical Evidence

The Plaintiff has a history of back problems, including kyphosis of his cervical and thoracic spine and degenerative changes of his cervical, thoracic and lumbar spine. X-rays showed a "great deal of" degenerative changes at C4-5 and at the midparts of the thoracic and lumbar spine. Dr. David Mack recommended vocational school, where the Plaintiff could learn to perform work not involving a lot of bending and lifting.

On September 30, 2009, the Plaintiff underwent a consultative examination with Vittal Chapa, M.D. The neurological examination was normal and motor examination revealed no specific weakness or muscle atrophy.

On October 6, 2009, state agency medical consultant Sandra Bilinsky, M.D., reviewed the medical evidence of record and opined that Plaintiff could perform light exertional work with postural and manipulative limitations. On December 2, 2009, state agency medical consultant Towfig Arjmand, M.D. affirmed that opinion.

On September 23, 2011, the Plaintiff underwent another consultative examination with Dr. Chapa. His gait and neurological examination were normal. He had full range of motion in all joints and a negative straight leg raising test. He was diagnosed with chronic lumbosacral pain syndrome and history of pulmonary embolus.

On May 20, 2011, the Plaintiff was seen for intake at Mental Health Centers of Central Illinois and was started on Celexa. On June 20, 2011, the Plaintiff sought emergency treatment for suicidal ideation after an attempted overdose. He reported a depressed mood but did not think he belonged in the psychiatric unit. He had been depressed because his physical impairments rendered him unable to do the activities he usually did. There was no definite diagnosis. He was assigned a Global Assessment of Functioning of 45 to 50 and was sent home and prescribed Trazadone.

On June 24, 2011, the Plaintiff reported not taking any medication and that Celexa did not work. He denied suicidal ideation but reported feeling depressed

and sleeping less. He began taking Prozac but the next month reported it made him more suicidal.

In August 2011, the Plaintiff reported that Wellbutrin caused him to have nightmares. Trazadone did not help him sleep. The Plaintiff was prescribed paroxetine and advised to see a psychiatrist.

On October 5, 2011, the Plaintiff underwent a psychological evaluation with Stephen G. Vincent, Ph.D. He reported a history of depression and minimal response to various antidepressants; he had not taken any medications in two months. He reported anxiety, guilt, hopelessness and irritability. His memory was intact and he denied alcohol and drug problems. He had no difficulties relating to the examiner but had moderately to severely depressed affect. Dr. Vincent found that Plaintiff suffers from major depression.

On October 24, 2011, state agency psychological consultant, Marva Dawkins, Ph.D., reviewed the medical evidence of record and opined that Plaintiff had mild limitations in activities of daily living, moderate limitations in social functioning and maintaining concentration, persistence and pace and one or two episodes of decompensation. His ability to carry out detailed instructions was moderately limited. His ability to complete a normal workday and workweek, his ability to interact with the general public and his ability to get along with coworkers or peers were all moderately impaired. His ability to respond

appropriately to changes in the work setting was moderately impaired.  His mental impairments were severe.  He could understand, remember and carry out one-to-two step instructions and perform and sustain one-to-two step tasks.  He could function in a work setting with minimal contact with coworkers, supervisors and the general public.

On February 21, 2012, Young-Ja Kim, M.D., found that Plaintiff had a non-severe physical impairment and was limited to simple, routine work that does not require sustained, appropriate interaction with the general public or close cooperation with coworkers.

On February 10, 2012, the Plaintiff reported wanting to try to handle depression without medication.  He was recommended to psychiatry and advised to take Coumadin as prescribed.  The following week, the Plaintiff returned to Memorial Health Centers but was not recommended for further assessment.  His depression was controlled as of May 11, 2012.

The Plaintiff saw a licensed counselor, Ted Harvey, LCPC, on a regular basis.  On January 3, 2013, Mr. Harvey opined that Plaintiff had various mild to moderate mental limitations and marked limitations in working in coordination with or proximity to others, in completing a normal workday and workweek without interruptions, in interacting appropriately with the general public, supervisors, and coworkers, in responding appropriately to changes in the work

setting, and in traveling to unfamiliar places. Mr. Harvey believed that Plaintiff would be absent from work more than three or four times per month and would experience symptom exacerbation if placed in a simple, routine job.

   B. <u>Hearing Testimony</u>

The Plaintiff testified he had not worked at all since January or February 2010. He needed help completing job applications and could fill one out "with a cheat sheet." He reported having memory trouble for about half of his life. His most recent work had been part-time on a paper route. Although he has a driver's license, the Plaintiff no longer drives. He had the driver's test read to him. He testified to having difficulty reading street signs and with spelling but said he could write some things down in order to understand. He could recognize street signs by shape and color. The ALJ expressed skepticism that someone could graduate without learning to read. She insisted that he had to have some basic reading skills in order to complete classwork and homework but Plaintiff said that he did not, and admitted he "cheated off girls in class." His wife took care of bills and made appointments.

The Plaintiff testified he didn't "feel the depression as far as trying to hurt himself" since seeing his counselor. There had been other instances when he tried to hurt himself though he did not tell anyone. These were "passive death wishes."

He also stated he experienced anxiety after fifteen minutes in a store and would then go outside. It was difficult for him to attend the administrative hearing.

The Plaintiff testified he had worked detailing cars and worked in a kitchen scrubbing pots and pans. He had briefly tried work as a bus monitor but that made him "hate kids." He felt he could not pay attention long enough to detail cars or wash dishes anymore, even if he could physically do it.

The Plaintiff reported no problems with stairs at home and stated his son took care of the yard. He testified bending and lifting irritated his back. He felt a burning sensation when he moved or stood the wrong way. He also reported trouble breathing after exertion or in extreme cold. He could lift forty pounds but could not carry that amount of weight.

Vocational expert Amanda Ortman testified that for a person limited to light work, simple routine and repetitive in nature, with only superficial rare contact with supervisors, co-workers and the general public, there were no jobs. She testified that if standing and walking were limited to five hours total, there were no light jobs even if the person could occasionally interact with co-workers, supervisors and the general public. The vocational expert stated that with the ALJ's limitations alone, she could identify no sedentary work.

The ALJ asked the vocational expert to assume an individual of the Plaintiff's age, education and work history, could perform light work such that he:

(1) could frequently push, pull, reach and balance; (2) could occasionally climb ramps and stairs, stoop, kneel, crouch and crawl; (3) could never climb ladders, ropes or scaffolding; (4) needed to avoid concentrated exposure to temperature extremes, wetness, humidity, fumes, odors, gases and other environment irritants; (5) would need to be limited to jobs that do not require complex or detailed job processes and have little change in job processes from day to day; and (6) could only occasionally interact with the public and co-workers. The vocational expert testified that such an individual could perform the jobs of racker (296,000 nationally), small products assembler (229,000 jobs nationally), and packager (542,000 jobs nationally).

A discussion of forms took place, with the Plaintiff admitting he did copy some things from the phone book with his wife's help. The ALJ was skeptical of his illiteracy because the forms said he completed them, though at the hearing he identified handwriting not his and named people who had helped with his paperwork. She wanted to examine school records but was told that the school district destroys special education records after seven years and a request was unlikely to produce evidence.

Following the hearing, the Plaintiff's wife filed an explanation of how the forms were done. Others read to the Plaintiff while he had help writing. This was

a tedious and inaccurate process that resulted in others taking over and completing the forms for him.

C. <u>ALJ's Decision</u>

In finding that Plaintiff was capable of light work, the ALJ said she gave "great weight" to the opinion of the state agency physician who assessed his physical capacity but gave "claimant the benefit of the doubt" by including additional limitations. She also gave "significant weight" to the assessment of the state agency psychologist and recited her findings verbatim, including limitations to simple one- and two-step jobs and the need to have only superficial contact with co-workers, supervisors and the general public, but finding "there is not a history of problems with supervisors or authority." She rejected Mr. Harvey's opinion and found it was "not supported" by the "objective record overall." She found that Plaintiff had gone to Wal-Mart once, as reflected in the treatment notes, which was more than he alleged during the hearing. She found that the counseling notes reflected "his mental impairments are under control," and the "records seem[] to reflect predominantly a negative attitude in that the claimant himself admits that he spent many years doing only what he wanted and put responsibility onto others." The ALJ accepted that Plaintiff is unable to read or write.

The Plaintiff alleges the ALJ erred in three primary respects. First, the ALJ "played doctor," substituting her lay opinion for that of the reviewing psychologist.

Second, the ALJ failed to incorporate all restrictions into her hypothetical questions and finding of functional capacity. Third, the ALJ failed to give appropriate weight to the opinion of the treating therapist.

The Commissioner alleges the ALJ properly evaluated the medical evidence of record and did not err at step five of the sequential evaluation process. Her decision was supported by substantial evidence and should be affirmed.

### III. DISCUSSION

#### A. Standard of review

To establish disability, the Plaintiff must demonstrate that he had a medically determinable physical or mental impairment that prevented him from performing substantial gainful activity. When, as here, the Appeals Council denies review, the ALJ's decision stands as the final decision of the Commissioner. *See Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010). The Act specifies that "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). "Substantial evidence" is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Yurt v. Colvin*, 758 F.3d 850, 856 (7th Cir. 2014) (citations omitted).

Although the Court's task is not to re-weigh evidence or substitute its judgment for that of the ALJ, the ALJ's decision "must provide enough discussion

for [the Court] to afford [the Plaintiff] meaningful judicial review and assess the validity of the agency's ultimate conclusion." *Id*. at 856-57. The ALJ "must build a logical bridge from the evidence to his conclusion, but he need not provide a complete written evaluation of every piece of testimony and evidence." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (internal citations and quotation marks omitted).

B. Whether the ALJ "played doctor"

Because an ALJ is not permitted to "play doctor," her decision must include some medical evidence as support. *See Hill v. Colvin*, 807 F.3d 862, 868 (7th Cir. 2015).

The Plaintiff first notes that the ALJ did not include any significant limitation on reaching in any direction, even though the physical functional capacity assessed by a doctor whose opinion, she said, was entitled to "great weight," assessed "limited reaching."

Additionally, the ALJ gave "significant weight" to the assessment of the state agency psychologist, reciting her findings that Plaintiff was limited to one- and two-step jobs and "he could function in a work setting where he has minimal contact with coworkers, supervisors and the general public." Based on an exhibit describing his impairments, the ALJ found that Plaintiff does not have a "history of problems with supervisors or authority."

[11]

The vocational expert testified that if an individual was limited to only rare or minimal contact with others, there would be no jobs at all. The ALJ's implication that Plaintiff's lack of any problems with supervisors or co-workers previously provided reason to disregard the psychologist's opinion is flawed because it ignores the possibility that his mental impairments that caused these issues came later. The ALJ does not point to any medical or psychological evidence supporting her departure from Dr. Dawkins's views regarding the Plaintiff's ability to interact with supervisors or coworkers.

The fact that the Plaintiff did not have a history of problems with supervisors or authority when he was working does not account for the possibility that Plaintiff's employment-related impaired social functioning occurred later. Dr. Dawkins was aware that Plaintiff had worked before but still limited him to superficial contact with supervisors, co-workers and the general public. The ALJ's decision does not account for the possibility that Plaintiff's mental impairments had worsened.

The ALJ does not explain why she rejected Dr. Dawkins's opinion with respect to coworkers. However, even assuming the ALJ considered the fact that Plaintiff was able to (1) relate with Dr. Vincent, (2) go out in public with his wife once at Wal-Mart, (3) see his son "several times every other week," and (4) speak with his mother on the phone, the Plaintiff's ability to have some interaction with a psychologist or family members says little about his ability to interact with co-

workers, the general public and supervisors for several hours each day and for five days a week.

Based on Dr. Dawkins's opinion, the Plaintiff would not be able to perform the jobs that the ALJ found he could do. The ALJ finds Dr. Dawkins's opinion to be entitled to "significant weight," except the part that renders the Plaintiff disabled. "[A] decision based on speculation is not supported by substantial evidence." *White ex rel. Smith v. Apfel*, 167 F.3d 369, 375 (7th Cir. 1999). Moreover, an ALJ may not "simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). The ALJ's failure to articulate why this part of Dr. Dawkins's opinion was not afforded "significant weight" leaves the Court to question whether the ALJ's decision was based on speculation and/or whether she engaged in impermissible cherry-picking of the record.

## IV. CONCLUSION

Based on the foregoing, the Court concludes that the ALJ's decision is not supported by substantial evidence. Having determined that the ALJ did not adequately explain why she rejected parts of Dr. Dawkins's opinion, the Court need not address the Plaintiff's alternative arguments. Pursuant to the fourth sentence of 42 U.S.C. §405(g), the Commissioner's decision will be reversed and the matter remanded for further proceedings.

Ergo, the Plaintiff's Motion for Summary Judgment [d/e 8] is ALLOWED.

The Defendant's Motion for Summary Affirmance [d/e 12] is DENIED.

The Clerk will enter a Judgment reversing the Commissioner's Decision that Plaintiff Scott E. Underwood is not disabled under the Social Security Act.

This case is remanded to the Commissioner of Social Security for further proceedings consistent with this Opinion.

ENTER: March 29, 2018

    FOR THE COURT:

/s/ *Richard Mills*
Richard Mills
United States District Judge